IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOME FUNDING GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 3:06-CV-01234 (HBF) |
| v. ) | |
| ) | |
| NICHOLAS KOCHMANN *ET AL.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF HOME FUNDING GROUP, LLC'S STATEMENT OF
COMPENSATORY DAMAGES AND APPLICATION FOR ATTORNEYS' FEES
AND OTHER LEGAL COSTS**

Plaintiff Home Funding Group, LLC ("Plaintiff" or "Home Funding Group"), by and through its undersigned counsel, hereby respectfully submits this Statement of Compensatory Damages and Application for Attorneys' Fees and Other Legal Costs and, accordingly, states as follows:

    **I.**    **COMPENSATORY DAMAGES**

Pursuant to this Honorable Court's Ruling dated December 14, 2007 ("Ruling"), below Plaintiff identifies the compensatory damages it seeks. With respect to the damages Home Funding Group has sustained at the hands of the Defendants, Plaintiff is seeking remuneration only for the revenue it would have earned in connection with loans that Defendant Nicholas Kochmann ("Kochmann") illicitly diverted from Plaintiff to Hamilton FS, LLC ("Hamilton") and which loans did in fact close through Hamilton.

On the issue of what damages Plaintiff ought to recover as a result of Defendants' breach of their employment agreements with Plaintiff, it is noteworthy that courts

applying Connecticut law adhere to the following maxim: "[A]lthough lost profits are not recoverable unless they are reasonably certain to result from the breach of contract, mere uncertainty as to the amount of the lost profits may be dispelled by the same degree of proof that is required in other civil actions, that is, the amount may be determined approximately upon ***reasonable inferences and estimates***." See, e.g., Burr v. Lichtenheim, 190 Conn. 351, 360 (1983) (citations omitted) (emphasis added); see also Robert S. Weiss and Associates, Inc. v. Wiederlight, 208 Conn. 525, 541 (1988) (same, citing Burr).  In the instant case, this Court has already found that Kochmann breached his Home Funding Group employment agreement respecting, and tortiously interfered with, the Coker, Lloyd, Parisi, and Weiner loans ("Loans")

Based upon evidence presented at trial, the amount of revenue Home Funding Group would have generated in connection with the Loans had they not been illicitly diverted by Kochmann to Hamilton can, at a minimum, be approximated based upon reasonable inferences and estimates.  On that point, the testimony of Roderick Perpetua, then Vice President of Home Funding Group, is the record's most elucidating.  During his trial testimony, Mr. Perpetua stated that, based upon what Plaintiff was typically doing at the times the Loans were diverted, Home Funding Group would have earned about $65,000.00 had it been afforded the opportunity to close those Loans.  See Trial Transcript from June 20, 2007, cited portions of which are attached hereto as Exhibit 1, at 93:3-94:23.  Importantly, that estimation was premised upon how things were done "typically".[1]  However, Mr. Perpetua testified that Plaintiff could have earned in excess of $80,000.00 in revenue from closing the Loans had "an extraordinary sales

---

[1] Please note that Mr. Perpetua affirmed that $50,000.00 is the minimum amount of revenue Plaintiff would have realized had the Loans closed through it, and not through Hamilton.  See Exhibit1 at 93:19-94:1.

2

professional" originated the Loans with an eye toward maximizing the profit that could be derived therefrom.  See id.  While at Home Funding Group (and later at Hamilton), the Loans were in the hands of "an extraordinary sales professional" – namely, Mr. Kochmann.  Messrs. Perpetua and Olmstead testified to the sales acumen of Mr. Kochmann.  At trial, Mr. Kochmann himself repeatedly declared that he was a "top" loan officer at Home Funding Group during his tenure there.  See, e.g., Trial Transcript from June 22, 2007, cited portions of which are attached hereto as Exhibit 2, at 121:12-24. Based upon the foregoing, one can reasonably infer and estimate – as Burr permits – that Home Funding Group would not have generated what it "typically" would have earned in revenue when one of its superstar loan officers was involved in closing the Loans. Instead, Plaintiff could have garnered more, somewhere north of $80,000.00.  Because of the improper actions of Kochmann, Home Funding Group was denied the ability to earn anything, not to mention the chance to maximize its profit.

While not directly apposite, the statements Kochmann made at trial on the revenue issue are worthy of mention.  Kochmann postulated that Hamilton earned roughly $43,750.00 in revenue from the Loans.[2]  Of note, it was in Kochmann's self interest to underestimate the figure and/or to present a number borne out of an absolute worst case hypothetical scenario.  Thus, if nothing else, it is clear from Kochmann's testimony that Plaintiff should recover no less than $43,750.00.

---

[2] In response to the Court's inquiries on the issue, Kochmann testified that he should have earned about $17,500.00 for closing the Loans at Hamilton.  See Trial Transcript from June 27, 2007, cited portions of which are attached hereto as Exhibit 3, at 65:21-67:16.  That amount represents forty percent (40%) of the total revenue Kochmann estimates Hamilton realized from the closings of the Loans.  See generally id. (Kochmann testifying that, per his agreement with Hamilton, he was to have earned commissions of 40% of the revenue Hamilton generated on loans Kochmann originated).  $17,500.00 is 40% of $43,750.00.

For several reasons, Plaintiff submits that the aforementioned testimony is not, and should not be, dispositive on the issue. One such reason is that Kochmann clearly had a tremendous personal interest in presenting as low a number as possible when asked about the value of the Loans to Hamilton, given the linkage between that inquiry and damages for which Kochmann is responsible. Further, even if Kochmann's testimony is accurate and wholly unbiased, it is important to remember that Home Funding Group and Hamilton are different entities. As such, they have different resources available to them and particular business <u>modi operandi</u>, all of which could result in divergent profit figures even in connection with the same loan. Because the issue before the Court concerns the damage Home Funding Group has sustained, the revenue that Home Funding Group would have derived from the Loans is apposite. While adding somewhat illuminating context, Kochmann's pronouncements of what Hamilton made by closing the Loans is nearly inconsequential.

Home Funding Group's damages are appropriately calculated by assessing what revenue Plaintiff would have generated from the Loans. Furthermore, because Home Funding Group was deprived – impermissibly and at Kochmann's hands – of the opportunity to even try to close the Loans under circumstances that would yield more than $80,000.00 in broker commissions, Plaintiff respectfully submits that any doubt about the certainty of the damages figure should be resolved in Home Funding Group's favor.

In light of the foregoing, Plaintiff urges the Court to award it compensatory damages in the amount of eighty thousand dollars ($80,000.00).

**II.     ATTORNEYS' FEES AND OTHER LEGAL COSTS**

Home Funding Group respectfully requests that this Honorable Court award it the attorneys' fees and the costs Plaintiff has incurred in connection with the above-referenced matter. (In further support of its application for attorneys' fees, Plaintiff respectfully refers the court to Exhibit 4 attached hereto, which is an affidavit of Ari Karen, Esquire).  Specifically, Home Funding Group seeks to recover legal costs and fees in the amount of $248,488.81 ($208,010.00 of which are attorneys' fees).  Plaintiff submits that it is entitled to recover its legal costs and fees pursuant to the March 2006 employment agreements between Home Funding Group and the Defendants.  See Trial Exhibit No. 3 at ¶ 13; Trial Exhibit No. 6 at ¶ 13.  Indeed, it is well-settled that Courts may enforce attorneys' fees and legal cost provisions like those set forth in the March 2006 agreements.  See, e.g., Young v. Vlahos, 103 Conn. App. 470, 473, 481 (2007) (upholding trial court's award of attorneys' fees, pursuant to contractual agreement at issue, in an amount more than three (3) times the amount of damages awarded). Moreover, the tremendous roles the Defendants played in Plaintiff's accrual of avoidable legal costs and fees militates in favor of awarding Home Funding Group the relief sought by this application.

Significantly, Defendants Nicholas Kochmann and Patrick Dougherty's ("Defendants") wayward approach to litigation substantially drove up the legal costs and expenses incurred by Plaintiff.  Illustrations of this point include, but are not limited to, the following:

1.     In February 2007, Defendants blatantly ignored discovery requests propounded by Home Funding Group, requiring Plaintiff to file, and to appear in person

5

to argue, a motion to compel.  <u>See</u> <u>generally</u> Docket Entry Nos. 107-113.  Similarly, Defendants' wholly inadequate "responses" to Plaintiff's initial discovery requests necessitated motions practice seeking supplementation.  <u>See</u> <u>generally</u> Docket Entry Nos. 64, 82, and 90.

      2.      On April 6, 2007, just days after the Court approbated the parties' agreement to expedite discovery and trial (implicitly, to forego pursuit of additional dispositive motions) rather than conduct a preliminary injunction motion hearing – and more than one month before the close of discovery, at a time when not a single deposition had yet occurred – Defendants filed a premature motion for summary judgment with which Plaintiff had to contend, all while endeavoring to complete discovery and preparing for trial.  <u>See</u> <u>generally</u> Docket Entry Nos. 125-128.

      3.      During mediation on June 14, 2007, in an effort to stave off the remaining costs associated with trial, Home Funding Group proposed, through the Honorable William I. Garfinkel, a "walk away" to dispose of the above-captioned case, whereby no money would exchange hands and the parties would enter into a mutual release.  Defendants, despite not having asserted a single counterclaim as of that date, rejected that offer and insisted that they would not even entertain a settlement offer that did not include a payment to them of at least six figures.

      4.      Similarly, in connection with a mediation held in January 2007 before the Honorable Holly B. Fitzsimmons, even though they had raised no affirmative claims, Defendants would not entertain any settlement offer that did not entail payment to them.  Furthermore, in an attempt to resolve its claims against Mr. Dougherty, Plaintiff offered to restore him to his position at Home Funding Group and to provide him with a signing

6

bonus and additional incentive pay; however, Mr. Dougherty declined that offer opting instead to perpetuate this litigation.

5. In May of 2007, the parties agreed, on the record during a telephonic conference with the Court, that following discovery they would forego trial and instead seek disposition by way of summary judgment – in yet another attempt by Plaintiff to avoid unnecessary expenses. Defendants later reneged on this agreement, prompting Plaintiff to expend resources to seek judicial enforcement thereof and, eventually, to incur legal costs and fees concomitant with trial. See generally Docket Entry Nos. 155-156.

6. Even after trial and prior to the Court's December 14, 2007 Ruling, Defendants continued to engage in inappropriate motions practice, seeking extraordinary relief absent a discernable, recognized legal basis therefor. See generally Docket Entry Nos. 205-213.

7. Indeed, the docket is replete with gratuitous motions filed by Defendants, and Home Funding Group incurred hefty legal costs and fees in connection with reviewing, analyzing, and responding to said motions.

The aforementioned examples strongly militate in favor of awarding Home Funding Group the full amount of the legal fees and other legal expenses it is endeavoring, by this application, to recoup. Further, in contrast with Defendants' actions throughout this litigation, Plaintiff did what it could to rein in – and where possible to avoid outright – unnecessary legal costs and fees including, without limitation, the following:

1. Plaintiff endeavored to settle the above-captioned matter as to one or both Defendants on several occasions.  Most recently, in June 2007, Plaintiffs offered a complete walk away.  Despite having the benefit of an almost entirely developed record – and being armed with the knowledge of that record's implications for them were they to proceed with trial – Defendants inexplicably rejected that offer.

2. Rather than rack up even more substantial attorneys' fees by preparing briefs responding to frivolous motions consisting of little more than prevarications that belie both the record and common sense, Home Funding Group's counsel, where appropriate, enlisted the Court's aid to spare their client avertable expense.  The "merit" of these motions can be readily gleaned from Defendants' abysmal won-loss record on motions (for instance, Plaintiff often requested telephonic conferences to address matters in a manner that was more expeditious and less expensive than submitting a written response to each brief and supplemental brief Defendants filed).

3. In May 2007, near the close of discovery at which time the value of summary judgment became apparent, Home Funding Group further endeavored to avoid the costs of trial for all parties by brokering an agreement with Defendants to proceed with dispositive motions practice in lieu of trial.  While initially assenting to it, Defendants later rejected that proposed course.

Home Funding Group submits that its efforts to eliminate and/or to minimize the expenditure of time and money throughout these proceedings underscore the propriety of awarding Plaintiff its legal costs and attorneys' fees.

### III.     CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that this Honorable Court award it $80,000.00 in damages and $248,488.81 ($208,010.00 of which are Plaintiff's attorneys' fees) in legal fees and costs.

DATED this 15th day of January 2008.          Respectfully submitted,

                                                 VENABLE LLP
                                                 Counsel for Plaintiff

                                               By:_____/s/ Trevor S. Blake_____
                                               Ari Karen (phv01024)
                                               Trevor S. Blake (phv01301)
                                               575 7th Street, NW
                                               Washington, DC 20004
                                               Telephone: (202) 344-4000
                                               Facsimile: (202) 344-8300
                                               Email: AKaren@Venable.com
                                               Email: TSBlake@Venable.com

## **CERTIFICATE OF SERVICE**

  I, Trevor S. Blake, hereby certify that, on **January 15, 2008**, I electronically filed one copy of the foregoing **PLAINTIFF HOME FUNDING GROUP, LLC'S STATEMENT OF COMPENSATORY DAMAGES AND APPLICATION FOR ATTORNEYS' FEES AND OTHER LEGAL COSTS and the exhibits thereto** with the Clerk of the Court using the CM/ECF system.

  Defendants' counsel are registered users of that system and are able to accept electronic filing. By operation of the Court's electronic filing system, notice of this filing will be sent to all parties' counsel who may access this filing through that system.

DATED this 15th day of January 2008.     ___/s/ Trevor S. Blake_____
                          Trevor S. Blake