UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|   |   |   |
|---|---|---|
| HOME FUNDING GROUP, LLC | : | |
| | : | |
| v. | : | CIV. NO. 3:06CV1234 (HBF) |
| | : | |
| NICHOLAS B. KOCHMANN | : | |
| PATRICK M. DOUGHERTY | : | |

RULING ON PLAINTIFF'S POST-TRIAL APPLICATION FOR
COMPENSATORY DAMAGES, COSTS, AND LEGAL FEES

I.   INTRODUCTION

On June 20-22 and 27, 2007, a bench trial was held on Home
Funding Group, LLC's ("Home Funding") eight-count complaint
against its former employees, Nicholas B. Kochmann and Patrick M.
Dougherty. Pending is plaintiff's Motion for Compensatory
Damages, Fees and Costs.[1] [Doc. #217].

For the reasons that follow, plaintiff's application [Doc.
#217] is **GRANTED** in part and **DENIED** in part to the extent set
forth below.

_____

[1]On September 16, 2007, before the entry of judgment,
defendants filed a post-trial motion for attorney's fees [Doc.
#207], which was denied [Doc. #214]. On January 15, 2008,
plaintiff filed an application for compensatory damages, and
attorney's fees and costs [Doc. #217], with supporting
documentation. On February 15, 2008, defendants filed their
opposition to plaintiff's application. [Doc. #221]. On March 26,
2008, plaintiff responded with a post-trial motion to strike
defendants' opposition [Doc. #224], as well as a reply brief to
defendants' opposition [Doc. #227]. Briefing on this motion was
completed on March 31, 2008.

II.   BACKGROUND

Facts

          The Court assumes familiarity with the background facts of
this case and will discuss only those facts essential to the
disposition of this application for damages, fees and costs.

     In March 2006, plaintiff Home Funding presented defendants
Kochmann and Dougherty with a Loan Officer Employment Agreement.
At the time, defendants had been working as loan officers at Home
Funding for more than two years. Dougherty signed the Employment
Agreement on March 9, 2006. Kochmann signed it on March 29, 2006,
after negotiating changes in his compensation rate. The
Employment Agreement prohibited the employees from working for a
competitor of Home Funding in the same geographic region for at
least eighteen months following termination of their employment
with Home Funding, and from disclosing Home Funding's
confidential business and proprietary information.

     Kochmann resigned from Home Funding on May 1, 2006, and
began working for Hamilton FS, LLC, another mortgage broker.
While employed by Hamilton, Kochmann originated four loans to
customers Coker, Lloyd, Parisi, and Weiner (hereinafter "the
Loans") which were the result of leads generated by Home Funding.
Dougherty resigned from Home Funding, and began working for

2

Hamilton on July 22, 2006.

<u>Judgment</u>

On February 29, 2008, judgment entered in favor of plaintiff on Count One (Breach of Fiduciary Duty) against defendant Nicholas Kochmann; Count Two (Tortious Interference with Prospective Contractual Relations) against defendant Nicholas Kochmann; and Count Four (Breach of Non-Compete Agreement) against defendants Nicholas Kochmann and Patrick Dougherty. [Doc. #222 at 65].

Judgment entered in favor of the defendant Nicholas Kochmann on Count Three (Misappropriation of Trade Secrets); Count Five (Breach of Non-Solicitation Agreement); and Count Seven (Breach of the Invention Assignment Agreement). Judgment entered in favor of defendants Nicholas Kochmann and Patrick Dougherty on Count Eight (Violation of CUTPA). <u>Id</u>

Counts One, Two and Six against defendant Patrick Dougherty were withdrawn on the record on the first day of trial. <u>Id.</u>

The trial was preceded by contentious motion practice. Plaintiff moved twice to expedite responses to discovery [Docs. #29, 64], for contempt [Doc. #33], and to compel discovery and for sanctions [Doc. #107]. Defendants moved to expedite responses to discovery [Doc. #60], twice for sanctions [Docs. #78, 162], to

3

compel discovery [Doc. #151], for contempt [Doc. #160], and for summary judgment [Doc. #128].

Plaintiff's Application

On January 15, 2008, plaintiff filed this application for compensatory damages, and attorney's fees and costs. [Doc. #217]. Plaintiff seeks $80,000 in compensatory damages for lost profits, $202,010 in attorneys' fees and $40,478.81 in costs. In support of its application, plaintiff submitted four appendices, including an itemized invoice of attorneys' fees. Notably, defendants' response did not cite the record at all, and included only one citation to the law.[2]  Id. at 2.

III.  DISCUSSION

Compensatory Damages

1.  Standard of Review

It is well-settled that contract damages are awarded to place the injured party in the same position as he would have

---

[2]Defendants' only citation appeared as follows:

> Quoting the Plaintiff's own Statement, "lost profits are not recoverable unless they are reasonably certain to result from the breach of contract" Burr v. Lichtenheim, 190 Conn. 351, 360 (1983)(emphasis added) [sic].

[Doc. #221 at 2].

been had the contract been fully performed. <u>Boucher v. McCaffrey</u>, No. NNICV054003598, 2007 WL 2035136 at *24 (Conn. Super. June 21, 2007) (citing <u>Fuessenich v. DiNardo</u>, 195 Conn. 144, 153 (1985)). "It is axiomatic that the burden of proving damages is on the party claiming them . . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty." <u>Expressway Associates II v. Friendly Ice Cream Corp. of Connecticut</u>, 218 Conn. 474, 476-77 (1991). However, plaintiff need not offer a mathematically precise formula as to the amount of damages. <u>Raishevich v. Foster</u>, 247 F.3d 337, 343 (2d Cir. 2001). Additionally, where the plaintiff's inability to prove an exact amount of damages arises from actions of the defendant, a fact finder "has some latitude to make a just and reasonable estimate of damages based on relevant data." <u>Id.</u> (quoting <u>Bigelow v. RKO Radio Pictures, Inc.</u>, 327 U.S. 251, 264 (1946)(internal quotation marks omitted)); <u>Grace v. Corbis-Sygma</u>, 487 F.3d 113, 119 (2d Cir. 2007)).

    2.  <u>Reasonable Damages</u>

This Court has already found that Kochmann breached the Home Funding Group employment agreement by tortiously interfering with the Coker, Lloyd, Parisi, and Weiner loans ("the Loans"), using leads provided by plaintiff. Plaintiff requests compensatory

damages in the amount of $80,000. Kochmann counters with the following arguments that plaintiff should recover no lost profits:

1.   "It is impossible for Plaintiff to claim that HomeBanc[3] would have closed these loans when they did not even know these prospects existed."

2.   "[N]one of the customers for whom Mr. Kochmann closed loans through HamiltonFS [sic] were customers of HomeBanc."

3.   "At no point during the entire, overly elongated duration of this matter, did the Plaintiff ever present even a scintilla of evidence to prove it had any reasonable expectation of profit from any of these customers."

[Doc. #221 at 2-3]. The Court considered these arguments in the bench ruling and found in favor of plaintiff on Counts One (Breach of Fiduciary Duty) and Two (Tortious Interference with Prospective Contractual Relations). [Doc. #222 at 65]. Additionally, Kochmann argues that because he "received not one

---

[3]Home Funding Group, LLC was formerly known as "HomeBanc, LLC," including during the period in which defendants were employed there.

dime from any of the loans closed through HamiltonFS" [Doc. #221 at 6], he is not liable to compensate plaintiff for lost profits; however, the purpose of damages in this case would not be to disgorge Kochmann's enrichment but rather to return Home Funding to the position it would have been in had the contract been performed. See Boucher, 2007 WL 2035136 at *24.

In regards to the proposed damage award, plaintiff's witness Roderick Perpetua, then Vice President of Home Funding Group, testified at trial that had "an extraordinary sales professional," such as defendant Kochmann, originated the Loans for Home Funding, plaintiff could have earned in excess of $80,000, while at minimum Home Funding would have realized a profit from the Loans "in the area of about $50,000." [Doc. #199 at 93-94]. Kochmann makes the following arguments in his response:

1.   "Plaintiff's claims to lost profit are based on wild speculation, not only as to the claim of such loss itself but even more so as to the amount allegedly lost." [Doc. #221 at 3]. "The Plaintiff has a vested interest in padding and inflating its estimate of lost profits." Id. at 4.

2.   "No data from any other loan done by HomeBanc was

7

presented and no business records were offered to lend credence to such a huge profit margin." <u>Id.</u> at 5.

3.    "HomeBanc is defunct as a company. . . . There is no entity to suffer loss or to serve as the depository for any funds which might have been forthcoming."[4] <u>Id.</u>.

However, at trial, defendant failed to challenge this estimate on cross examination or in the defendant's case. [<u>See</u> Doc. #199].[5] A damage estimate does not need to be mathematically precise to satisfy the plaintiff's burden of proof. <u>Raishevich</u>, 247 F.3d at 343. It is necessarily vague because Kochmann's tortious breach of contract prevented plaintiff from maximizing its profits from the leads; therefore, the Court must make a reasonable estimate based on relevant data. <u>Id.</u>  However, the existence of relevant data that plaintiff failed to provide in support of this application, namely documentation of Home Funding's profit margins for similar loans, militates against the upward range of plaintiff's estimate.

---

[4]Plaintiff replies that "[w]hile Home Funding Group has ceased operations, the company remains legally extant . . . ." [Doc. #227 at 2].

[5]Moreover, Kochmann did not offer affidavits/testimony from these customers to establish their unwillingness to deal with Home Funding.

Although defendant argues that "[p]laintiff has presented no evidence as to the rate of commission or the profit margin by Mr. Kochmann for loans closed by him while at HomeBanc" [Doc. #221 at 4], Kochmann estimated when questioned by the Court at trial that, based upon his instant examination of Def. Exhibit 528 "Kochmann Loan Applications," the Loans generated a total profit to Hamilton FS of $43,750.[6] [Doc. #202 at 66-67]. Plaintiff argues that Kochmann was underestimating his commission to decrease his liability for damages. [Doc. #217 at 4].

Based upon the parties' testimony and exhibits, the Court finds that the plaintiff has established with "reasonable inferences and estimates" that an award of compensatory damages is warranted in the amount of $43,750. See Burr v. Lichtenheim, 190 Conn. 351, 360 (1983); Robert S. Weiss and Associates, Inc. v. Wiederlight, 208 Conn. 525, 546 (1988). Accordingly, the plaintiff's application for damages is **GRANTED** in the amount of **$43,750.**

---

[6]Kochmann testified that his commission at Hamilton FS was "[f]orty percent of the number on the HUD, on the yield spread, and on the points which, combined, I think was one percent, or one and a half with Koker [sic]. So I would have gotten 40 percent of one and a half percent." [Doc. #202 at 66]. At this rate he testified he would have received a commission of $17,500 for closing the Loans. [Doc. #202 at 67]. $17,500 is 40% of $43,750.

9

B.   <u>Attorney's fees and Costs</u>

_____    1.   <u>Standard of Review</u>

It is a well-established principle that "[i]n diversity cases, attorney's fees are considered substantive and are controlled by state law." <u>Bristol Tech., Inc. v. Microsoft Corp.</u>, 127 F. Supp. 2d 64, 66 (D. Conn. 2000) (quoting <u>One Parcel of Property Located at 414 Kings Highway</u>, No. 5:91-CV-158, 1999 WL 301704, at *4 (D. Conn. May 11, 1999)). <u>See</u> <u>also</u>, <u>Kaplan v. Rand</u>, 192 F.3d 60, 70 (2d Cir. 1999). Connecticut follows the common law "American" rule in assessing the award of attorney fees.  Under the "American" rule, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." <u>Ames v. Comm'r of Motor Vehicles</u>, 267 Conn. 524, 532 (2004). "A successful litigant is entitled to an award of attorney's fees if they are provided by contract . . . ." <u>Jones v. Ippoliti</u>, 52 Conn. App. 199, 209 (1999) (citations omitted); <u>see also</u> <u>MD Drilling & Blasting v. MLS Construction, LLC</u>, 93 Conn. App. 451, 457-58 (2006).  Here, the Employment Agreement signed by both defendants provides in relevant part:

> 9.   <u>INDEMNIFICATION</u>
> [Loan Officer] hereby agrees to indemnify and
> defend HomeBanc, LLC for any and all

> attorney's fees, costs of prudent settlement,
> judgments, or damages incurred by the Company
> as a result of any claim or cause of action
> arising out of the actual or alleged
> violation of any term or condition of this
> Agreement and/or LO's performance of duties
> on behalf of the Company.
> ...
> 13.  LEGAL FEES
> [Loan Officer] further agrees that HomeBanc,
> LLC shall be entitled to the cost of all
> legal fees and expenses incurred in
> investigating and enforcing the covenants
> contained herein, including fees and expenses
> incurred prior to filing suit.

[Pl. Ex 3 & 6].

Connecticut law has also established that where there is a
contractual provision for attorney's fees, the term "reasonable"
is implied by law.  Crest Plumbing and Heating, Co. v. DiLoreto,
12 Conn. App. 468, 480 (1987) (citing Storm Assoc. Inc. v.
Baumgold, 186 Conn. 237, 245-46 (1982).  There is an "undisputed
requirement that the reasonableness of attorney's fees and costs
must be proven by an appropriate evidentiary showing."  Smith v.
Snyder, 267 Conn. 456, 471 (2004) (quoting Hartford Elec. Light
Co. v. Tucker, 183 Conn. 85, 91, cert. denied, 454 U.S. 837
(1981)); accord Barco Auto Leasing Corp. v. House, 202 Conn. 106,
121 (1987).  "Courts have a general knowledge of what would be
reasonable compensation for services which are fairly stated and
described." Smith, 267 Conn. at 471 (quoting Shapero v. Mercede,

11

262 Conn. 1, 9 (2002)). Therefore, "[c]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." Smith, 267 Conn at 471-72 (quoting Andrew v. Gorby, 237 Conn. 12, 24 (1996)).

However, courts may not rely on their general knowledge alone. While the courts have been "careful not to limit the contours of what particular factual showing may suffice . . . a threshold evidentiary showing is a prerequisite to an award of attorney's fees." Smith, 267 Conn. at 477; see also Miller v. Kirshner, 225 Conn. 185, 199-201 (1993) (sworn affidavit with attached itemization together with the court's knowledge supported the award for attorney's fees); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (requiring contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done).

2.   Reasonableness of Fees

"There are no certain or scientific rules to govern the determination of a reasonable attorney's fee." Bridgeport Singer Emp. Fed. Credit Union v. Piczko, 3 Conn. Cir. Ct. 621, 622

(1966).  Instead, it is an issue that has "plagued and perplexed the legal system".  Id.  Regardless, the majority of courts agree that "attorney's fees should be awarded 'with an eye towards moderation; seeking to avoid either the reality or the appearance of awarding 'windfall fees.'" Ham v. Greene, No. 322775, 2000 WL 872707, at *14-15 (Conn. Super. Ct. June 12, 2000) (quoting Smart SMR of New York, Inc. v. Zoning Com'm., 9 F. Supp. 2d 143, 147 (1998)) (quoting New York State Ass'n. for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983)).  "A court has few duties of a more delicate nature than that of fixing [reasonable] counsel fees." Laudano v. New Haven, 58 Conn. App. 819, 822 (2000) (internal quotations omitted).

Connecticut courts determine the reasonableness of fees by reviewing the twelve factors cited in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  These twelve guidelines, which essentially parallel Rule 1.5(a) of the Rules of Professional Conduct, include:

> (1)  the time and labor required;
>
> (2)  the novelty and difficulty of the questions;
>
> (3)  the skill requisite to perform the legal service properly;
>
> (4)  the preclusion of other employment by the attorney due to acceptance of the case;

(5)   the customary fee for similar work in the
      community;

(6)   whether the fee is fixed or contingent;

(7)   the time limitations imposed by the client or the
      circumstances;

(8)   the amount involved and the results obtained;

(9)   the experience, reputation and ability of the
      attorneys;

(10)  the undesirability of the case;

(11)  the nature and length of the professional
      relationship with the client; and

(12)  awards in similar cases.

Id.; see also Simms v. Chaisson, 277 Conn. 319, 332 (2006)

("Connecticut courts traditionally examine the factors enumerated

in Rule 1.5(a) of the Rules of Professional Conduct in

calculating a reasonable attorneys fee award"). In determining

reasonableness, "[t]he court ... [is] not required to consider

each of the twelve factors individually, but instead [is]

required to consider the full panoply of factors and not base its

decision solely on one of the elements." Riggio v. Orkin

Exterminating Co., 58 Conn. App. 309, 318 (2000).

     To guide the district court's discretion, the Supreme Court

has held that these twelve factors are supplemental to the more

fundamental determination of the number of hours reasonably

expended at a reasonable rate, i.e. the "lodestar " figure.
Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). When examining
the evidence, "[h]ours that are excessive, redundant, or
otherwise unnecessary should be excluded and in dealing with such
surplusage, the court has discretion simply to deduct a
reasonable percentage of the number of hours claimed . . . ."
Kirsch, 148 F.3d at 173 (2d Cir. 1998) (internal quotation marks
omitted). Additionally, "the most critical factor in determining
the reasonableness of a fee award is the degree of success
obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting
Hensley, 461 U.S. at 436)(internal quotation marks omitted). A
plaintiff who prevails on some but not all of his claims is not
entitled to a fee award for unsuccessful claims that were based
on different facts and different legal theories. Hensley, 461
U.S. at 434. However, "[a] plaintiff's lack of success on some of
his claims does not require the court to reduce the lodestar
amount where the successful and unsuccessful claims were
interrelated and required essentially the same proof." Murphy v.
Lynn, 118 F.3d 938, 952 (2d Cir. 1997), cert. denied, 522 U.S.
1115 (1998) (citation omitted); Reiter v. Metropolitan Transp.
Authority of State of New York, No. 01CV2762(GWG), 2007 WL
2775144 at *13 (S.D.N.Y. September 25, 2007).

Plaintiff bases its fee request of $202,010 on 713.1 hours of time billed by Venable, LLP partners Ari Karen and Shaffin Datoo, associates Trevor Blake and Mark Hayes,[7] and paralegals Zhanel Nurbalina and Alexandra Megaris. Prior to Venable, LLP, plaintiff had retained Krupin O'Brien, LLC attorneys Kara Maciel and Richard Sloane. [Doc. #217-6]. The firms were retained on an hourly basis. Invoice entries include fees for the post-trial application for damages and fees.

Defendants generally object to the request, claiming the fees are excessive, but offer no concrete figures or calculus for reducing either the damages or the fees and costs. Rather, in apparent disregard of the bench ruling, defendants continue to assert that plaintiff's entire case was frivolous. [Doc. #221 at 10]. However, defendants do estimate that they incurred "legal fees for their defense in excess of $185,000." Id. at 11. Plaintiff seizes upon this figure in its reply to defendants' opposition, asserting that it substantiates plaintiff's request of $202,010. [Doc. #227 at 6]. Under the standard of review, the Court considers the following relevant factors from Johnson and

---

[7]None of the hours billed by Luisa Lopez are awardable because the entries were so thoroughly redacted that the Court could not reasonably review them.

16

<u>Hensley</u>:

          a.    <u>The Time and Labor Required, and the</u>
               <u>Novelty and Difficulty of the Questions</u>

In preparing its fee application, plaintiff represents that defendants' "wayward approach to litigation" drove up the cost to the plaintiff.[8] [Doc. #217 at 7]. Plaintiff argues:

    1.    Defendants ignored discovery requests or provided inadequate responses, requiring plaintiff to file motions to compel and supplement discovery.

    2.    Defendants filed a "premature" motion for summary judgment during the pre-trial discovery period.

    3.    Defendants refused a settlement offer from plaintiff in a mediation on June 14, 2007, before Magistrate Judge Garfinkel in which plaintiff offered to drop the case if the parties would enter into a mutual release. Defendants refused and actually demanded a payment from plaintiff, while threatening a counterclaim for vexatious litigation.[9]

---

[8]Plaintiff's witness Roderick Perpetua also testified on direct examination that Home Funding spent "typically 15 to $20,000" on similar noncompetition cases. [Doc. #199 at 96].

[9]The Court has not considered these contentions in awarding attorneys' fees. While the failure to settle a claim maybe appropriately considered where the recovery is less than the

4.   Plaintiff offered to reinstate defendant Dougherty to
     his position at Home Funding and to pay him a signing
     bonus and incentive pay to resolve their claims against
     him. Dougherty declined. <u>See</u> n.9.

5.   The parties agreed in May of 2007 to forego trial in
     favor of summary judgment, but defendants reneged.

6.   Defendant engaged in "inappropriate" motions practice
     "absent a discernible, recognized legal basis" [Doc.
     #217 at 7] that dramatically increased the hours of
     plaintiff's attorneys.

[Doc. #217 5-7; Doc. #227 at 5]. Plaintiff also represents that
it sought to be cost-conscious not only by offering settlement or
dispositive motions in lieu of trial, but also by enlisting the
Court's aid in dispensing with "frivolous motions" through
telephonic conference rather than by written memoranda. [Doc.
#217 at 7]. Defendants counter that their motions practice was
appropriate while it was plaintiffs who filed unnecessary
motions, that plaintiff never filed any response to defendants'

_____

amount for which a prevailing party could have settled, the Court
declines to punish defendants financially for their decisions not
to settle.  However, the Court gives credence to defendants'
argument that plaintiff could have unilaterally dropped the suit
and avoided incurring attorneys' fees.

motion for summary judgment, and that plaintiff could have dropped the suit unilaterally. Id. at 8-10.

The resources expended on this case were disproportionate to its relatively uncomplicated issues. Essentially it concerned the interpretation of a straightforward contract, along with factual determinations regarding proprietary information of Home Funding, the circumstances of Dougherty's resignation, and the status of defendants' new employer as a competitor of Home Funding. Both parties attest that the discovery process was contentious.

Taken as a whole, the hours expended by plaintiff's attorneys were not excessive in relation to the peculiar demands of this litigation, in which defendants made the case much more labor intensive than it needed to be. However, the Court has reduced specific entries that are redundant, vague, or excessive. See Kirsch, 148 F.3d at 173.

b.   The Amount Involved and the Results Obtained

In Connecticut this factor is essentially a consideration of degree of successful recovery by the plaintiff. See e.g. Simms, 277 Conn. at 333 (attorney's fees would be inappropriate where "the plaintiff was aiming high and fell far short . . . in the process inflicting heavy costs on his opponent and wasting the time of the court" in a civil rights case). The degree of success

is not a dispositive factor, however, but one factor among others. Id.; Commission on Human Rights and Opportunities v. Brookstone Court, LLC, 107 Conn. App. 340, 349-350 (Conn. App. 2008). In the present case, the fees far outweigh the actual damages; however, as the Court found above, the strategy employed by the defendants increased the time and labor required to litigate the claims. Furthermore, plaintiffs were largely successful in recovering all relief claimed, including an injunction to prevent defendants from working for a competitor, which has no discrete monetary value.

However, while plaintiff was almost completely successful in the relief obtained, defendants point out that plaintiff prevailed only on four of the original sixteen claims (eight against each defendant). [Doc. #221 at 8, 11]. The Court finds that a reduction is warranted by the sheer number of unsuccessful claims in comparison to the successful claims, as well as the failure of plaintiffs to drop certain claims against defendant Dougherty until the first day of trial, all of which certainly increased the expenditure of resources by both sides. But here that reduction is mitigated by the fact that preparation required for the unsuccessful claims overlapped with the successful claims as well. See Murphy v. Lynn, 118 F.3d 938, 952 (2d Cir.

20

1997)("plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and unsuccessful claims were interrelated and required essentially the same proof").

             c.   <u>Prevailing Market Rates in Connecticut,</u>
                 <u>and the Experience and Expertise of Counsel</u>

Under Connecticut law, absent a showing of specialized expertise, an attorney who handles a case in Connecticut is subject to the prevailing market rates in Connecticut. <u>Kaplan</u>, 2000 WL 767679, at * 7 (in order to obtain prevailing New York rates, attorney would have to demonstrate that no competent attorney in Connecticut could have handled the case); <u>Tsombanidis v. City of West Haven</u>, 208 F. Supp. 2d 263, 277 (D. Conn. 2002) (although $225 may be a reasonable rate for Washington, D.C. attorneys, it is not the prevailing market rate in Connecticut). Defendants argue without evidentiary support that plaintiff's application is both excessive and unreasonable, alleging that 1) plaintiff's attorneys bill at an excessive rate, 2) plaintiff hired new counsel who charged higher fees, and 3) plaintiff did not need to use a second attorney who billed at a higher rate. [Doc. #221 at 7-8].

Plaintiff has provided no evidence of prevailing rates in

Connecticut, nor that its attorneys possessed any specialized

knowledge. Therefore, when determining the reasonable fee rates,

the Court looks to the prevailing rates in Connecticut for

attorneys with similar expertise. This Court recently reviewed

the prevailing rate for paralegals, associates and partners

practicing in the District of Connecticut.

> From 1996 through 2005, courts in Connecticut
> have recognized reasonable attorney rates in
> varying amounts.  See Evans v. State of
> Connecticut, 967 F. Supp. 673 (D. Conn. 1997)
> (in Title VII action, rates of $200 for
> attorney and $50 for law students/paralegals
> were reasonable); Wallace v. Fox, 7 F. Supp.
> 2d 132 (D. Conn. 1998) (in class action
> shareholder derivative suit, average rate of
> $300 to $375 was reasonable); Jacques All
> Trades Corp. v. Laverne Brown, et al, CV
> 900381618S, 1998 WL 161228 (Conn. Super. Mar.
> 17, 1998) (in CUTPA action, $150 for
> partners, $100 for associates, and $55 for
> paralegals was reasonable); Hardy v. Saliva
> Diagnostic Sys., Inc., 52 F. Supp. 2d 333 (D.
> Conn. 1999) (in breach of employment contract
> case, rates of $185 to $200 were reasonable);
> St. George v. Mak, No. 5:92CV587, 2000 WL
> 305249 (D. Conn. Feb. 15, 2000) (in § 1983
> action, rates of $250 and $175 were not
> challenged as unreasonable); Kaplan, 2000 WL
> 767679, at * 7 (in CUTPA case, reduced
> reasonable rate for NY attorney was $350);
> Evanauskas v. Strumpf, No. 3:00CV1106, 2001
> WL 777477, at *23 (D. Conn. June 27, 2001)
> (in a Fair Debt Collections Act case, an
> attorney with "extensive experience" was
> entitled to $275 per hour); Tsombanidis, 208
> F. Supp. 2d at 275-77 (in motion for
> attorney's fees under § 1988, partner rate of

$275, associate rate of $165, and paralegal rate of $50 were reasonable); <u>Petronella v. Acas</u>, No. 3:02cv1047, 2004 WL 1688525 (D. Conn. Jan. 23, 2004) (in an interpleader action $225 was a reasonable rate which could be reduced to $113 after a deduction for travel time was made); <u>Stanley Shenker & Assoc., Inc. v. World Wrestling Fed'n. Entm't.</u>, No. X05CV000180933S, 2005 WL 758135 (Conn. Super. Mar. 1, 2005) (in a complex secured transactions case, $285 for a partner and $195 for an associate was reasonable); <u>Sony Electronics, Inc. v. Soundview Tech.</u>, 389 F. Supp. 2d 443, (D. Conn. 2005) (in complex trademark litigation, $400 is the highest rate Connecticut has allowed for an attorney with vast experience); <u>Galazo v. Pieksza</u>, No. 4:01-CV-01589, 2006 WL 141652 (D. Conn. Jan. 19, 2006) (in § 1983 case, $350 for partner and $250 for associate were reasonable rates).

<u>See</u> <u>Rand-Whitney Containerboard v. Town of Montville</u>, 3:96CV413(HBF), 2006 WL 2839236, *10 (D. Conn. Sept. 5, 2006), <u>rev'd on other grounds</u>, Nos. 07-3291-cv, 07-3541-cv, 2008 WL 3992545 (2d Cir. Aug. 25, 2008). Accordingly, the Court finds the following rates are reasonable based on the hourly rates charged to the plaintiff [Doc. #217-6 at 21] and Court's years of practice and knowledge of rates charged generally within the District Court.

|  | Rate | Hours | Total |
|---|---|---|---|
| Ari Karen, Partner | $320 | 59.9 | $19,168.00 |
| Shaffin A. Datoo, Partner | $320 | 0.6 | $192.00 |

| | | | |
|---|---|---|---|
| Trevor S. Blake, Associate | $280 | 340.4 | $95,312.00 |
| Krupin O'Brien attorneys[10] | $280 | 101.1 | $28,308.00 |
| Mark S. Hayes, Associate | $200 | 13.4 | $2,680.00 |
| Zhanel Nurbalina, Paralegal | $ 85 | 6.5 | $552.50 |
| Alexandra Megaris, Paralegal | $ 85 | 10.4 | $884.00 |
| | TOTAL | 532.3 | $147,096.50 |

The Court finds an across-the-board reduction of forty percent (40%) is warranted based on the unsuccessful claims. Accordingly, plaintiff's request for fees is **GRANTED** in the amount of **$88,258.**

3. Costs

Plaintiff also seeks $40,478.81 in costs associated with this litigation.  Defendants make a blanket objection to costs and fees, arguing that no costs should be awarded and that plaintiffs hired overly expensive counsel, without further specificity. Plaintiff submitted invoice documentation of costs but no supporting explanations. [Doc. #217 at 5]. These fall under the general categories of travel expenses, internal photocopying, electronic research, service of process, telephone and conferencing charges, postage, witness fees, and deposition

---

[10]The first invoice from Krupin O'Brien, LLC attorneys Kara Maciel and Richard Sloane is not itemized per attorney.

24

services.   Most of the entries are not taxable as costs under
Local Rule 54 for the District of Connecticut, and plaintiff
failed to submit entries for some costs that would be taxable
under the Local Rule.

a.   Items Not Taxable as Costs

Electronic Research

All computer legal research fees are disallowed pursuant to
D. Conn. L. Civ. R. 54(c)(7)(xi).

Postage and Federal Express

All general postage expenses of counsel, Federal Express or
other express mail service costs are disallowed pursuant to D.
Conn. L. Civ. R. 54(c)(7)(xvi).  Similarly, fees incurred for
messenger service are disallowed.

Travel Expenses

All counsel's fees and expenses in arranging for and
traveling to a deposition or trial are disallowed pursuant to D.
Conn. L. Civ. R. 54(c)(7)(v).[11]  All attorney's fees incurred in
attending depositions, conferences or trial, including expenses
for investigations are not taxable as costs pursuant to D. Conn.

---

[11]Defendants' argument that plaintiff could have minimized
travel costs by hiring a Connecticut firm [Doc. #221 at 7-8] is
therefore addressed by D. Conn. L. Civ. R. 54(c)(7)(v).

L. Civ. R. 54(c)(7)(ix).

Service of Process Fees

All service of process fees for discovery subpoenas are disallowed pursuant to D. Conn. L. Civ. R. 54(c)(7)(ii).

b.    Items Taxable as Costs

Complaint and Service of Process

The Complaint filing fee and service fees for initial process and subpoenas for depositions are recoverable pursuant to D. Conn. L. Civ. R. 54(c)(1). The Court finds these costs in the amount of $409.50.

Fees for Court Reporter

The costs of an original and one copy of deposition transcripts are recoverable if they are used for cross examination or impeachment, or if they are necessarily obtained for the preparation of the case and for the convenience of counsel.  D. Conn. L. Civ. R. 54(c)(2)(ii).  The Court finds costs for transcripts in the amount of $365.20. The Court disallows the entries of May 22 and June 5, 2007, in the total amount of $7,528.45 for "Deposition Services" as too vague. [See Doc. #217-6 at 44, 50].

Fees for Witnesses

Witness fees for attendance at a deposition are recoverable

26

if the deposition is a taxable cost. D. Conn. L. Civ. R.
54(c)(4)(i). The Court disallows the entries of July 18, 2007, in
the total amount of $173.35 for "Witness Fees: Witness Fees"
[sic] as too vague. [See Doc. #217-6 at 29].

        Photocopies

        "Costs for exemplifications or copies of papers are taxable
only if counsel can demonstrate that such exemplifications or
copies were necessarily obtained for use in the case. . . .
Copies for the convenience of counsel or additional copies are
not taxable unless otherwise directed by the Court." D. Conn. L.
Civ. R. (c)(3)(i). The Court finds costs for a transcript copy in
the amount of $834.98. All other photocopy fees are disallowed
pursuant to D. Conn. L. Civ. R. 54(c)(3)(iii) and (c)(7)(xv).

        Accordingly, plaintiff's request for costs is **GRANTED** in the
amount of **$1,609.68.**

CONCLUSION

For the reasons stated, plaintiff's post-trial Motion for Compensatory Damages, Fees and Costs **[Doc. #217]** is **GRANTED** in accordance with this ruling. Compensatory damages are awarded in the amount of **$43,750** to be paid by defendant Kochmann. Attorney's fees are awarded in the amount of **$88,259** and costs in the amount of **$1,609.68**, to be paid as follows, by defendant Kochmann $75,000 in fees and $1,200 in costs; by defendant Dougherty, $13,259 in fees and $409.68 in costs.

Plaintiff's Motion to Strike defendants' response to plaintiff's Motion for Compensatory Damages, Fees and Costs **[Doc #224]** is **DENIED.**

This is not a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. #147] on April 11, 2007, with appeal to the Court of Appeals.

SO ORDERED at Bridgeport this 16th day of September 2008.


                                    /s/
                                    HOLLY B. FITZSIMMONS
                                    UNITED STATES MAGISTRATE JUDGE

28